UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,           :

    -against-           :      09 Cr. 1002 (WHP)

RICHARD CHICHAKLI           :      <u>ORDER</u>

    Defendant.           :
------------------------------------------------------------X

WILLIAM H. PAULEY III, United States District Judge:

    The Court received the attached <u>pro se</u> motion dated February 9, 2014 and letter dated February 10, 2014 and now forwards it to counsel. A conference is scheduled for February 28, 2014 at 2:00 p.m. Defense counsel is directed to serve a copy of this order on Mr. Chichakli forthwith.

Dated: February 25, 2014
      New York, New York

                        SO ORDERED:

                        WILLIAM H. PAULEY III,
                        U.S.D.J.

*All counsel of record:*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/25/14

FROM: 92036054
TO:
SUBJECT: Appeal Letter
DATE: 02/09/2014 07:35:06 PM



Hon. Judge William Pauley III
U.S. District Judge - SDNY
500 Pearl Street
New York, NY 10007

      Subject: Motion for Setting-aside the jury's verdict and
      Request for granting a New Trial

      Reference: United States V. Richard Chichakli, Case 09-Cri.-1002 (WHP)

Hon. Judge Pauley

    The defendant in the above referenced case is currently represented by Mr. Marlon Kirton, a government-appointed lawyer, the same lawyer who was previously appointed as "Stand-by Counsel" during the trial. Mr. Kirton is expected to submit a motion to the court on behalf of the defendant in request for re-trial by February 20, 2014.

    The defendant believes that the action or lack of action on the part of Mr. Kirton as "Stand-by Counsel" is a ground for setting-aside the jury's verdict and granting the defendant a new trial; therefore, and because it would not be expected from Mr. Kirton to address his action or the lack of it in connection with this case adversely, the defendant is submitting this memorandum for consideration by court.

    NOW Comes the defendant in the above referenced case and asserts that the trial was unfair and the proceeding was tainted by many violations of his constitutional rights, and many violation of the Code as follows:

### DEFENDANT WAS NOT AFFORDED A FAIR OPPORTUNITY TO PREPARE A COMPLETE DEFENSE IN VIOLATION OF HIS CONSTITUTIONAL RIGHT

    The Pro-Se defendant was incarcerated since his extradition to the United States. The defendant made submitted two applications for bail in order to prepare his defense and his applications were denied; thus, he was remanded in prison.

    The defendant elected to go Pro-Se after making several complaints to the court concerning the lack of action on the part of the; then, court appointed lawyer Mr. Kirton. The court appointed Mr. Kirton as Stand-by council to assist the incarcerated defendant. The case was also designated as "Complex Case" and budget was assigned to the case. The management of the budget and the selection of the defense team was fully controlled by Mr. Kirton. The team included one investigator.

    Furthermore, defendant being incarcerated in prison, is deprived from the means required to contact, summon, interview, and subpoena witnesses and records. Under the circumstances in this situation, it is the duty of the stand-by lawyer to perform these tasks. The stand-by lawyer, Mr. Kirton failed to perform this essential task in timely manner and to the best of his ability.

    Defendant have started providing the names of potential witnesses to Mr. Kirton in early September and continued throughout consistent with the releases of the discovery by the government until the time of trial. Defendant e-mailed the potential complete list of the witnesses to be called to Mr. kirton on October 07, and a list of the additional witnesses on Oct 14, 15, and 16. Defendant have further posted an updated list of the defense witnesses, to the Court, to the government, and to Mr. Kirton on October 23, 2013. The full and complete defense witness list was then delivered to all parties, including the Court on November 6, 2013. The list included 33 witnesses out of them only one potential witness was unnamed due to difficulties in contacting him. It is unclear why would Mr. Kirton fail to subpoena the witnesses identified on the list in time for trial.



Due to the absence-of, the lack of interest in performing work, and lack of understanding which were demonstrated by Mr. Kirton since he was assigned to the case, defendant anticipated problems such as undue delay and lack of performance with the issues of subpoena witnesses and documents essential to the defense and therefore, he alerted the court, in writing in October, 2013. The court responded by reprimanding the defendant for "writing too many letters to the court" while avoiding to address the lack of action by the Court-appointed Stand-by lawyer. Ironically, the court - during trial -blamed the defendant himself for the lack of performance of Mr. Kirton, and particularly over a matter of a the ONE unnamed witness in a list of 33 names as reflected in the records.

Mr. Kirton failure to summon witnesses such as, for example, the manager of Sharjah airport helped the government theory that Samar Air was "Unviable" by preventing the defendant from exposing the fact that Samar was an operational airlines with scheduled flights to that particular airport. The failure of subpoena Allen Blattner aided the government by preventing the defendant from exposing his and his partner's lies about their knowledge of Chichakli's SDN status. Mr. It appears as if Mr. Kirton was tasked by the court to ensure the failure of the defense by failing to subpoena witnesses and documents; including those related to Samar Air operations and which are available through the International regulatory Bodies including ICAO, IATA, and others.

Witnesses such as Ghanem Al Hajri, Roman Cederov, Robert Cunnigham, Andrey Romanov, Valy-John Babayev, Adam Szubin, Robert Zacharaiseiwicz, Jehad Almustafa, and others from the Veteran Administration, ICAO, IATA, Sharjah Airport, Aventura, Samar Air, FBI among other entities would have rendered the government theories which were used to convict the defendant invalid and meaningless. NONE of the fact witnesses were allowed, none...

The lack of performance by Mr. Kirton, the complacency of the government, and the lack of action by the court; collectively and combined barred the defendant any meaningful opportunity to present complete defense in violation of the longstanding principal that "The constitution guarantees criminal defendant a meaningful opportunity to present complete defense" Crane v. Kentucky, 467 U.S. 683, 690 (1986)

FURTHERMORE;

The court-appointed stand-by lawyer have further neglected the performance of his duty by failing to subpoena records that was essential for the defense. Records that are as simple as tax records and bank records were not produced despite being asked for by the Pro-Se defendant more than Three months before trial.

FURTHERMORE; and in order to make matter worse for the defense, on occasions, the court-appointed stand-by lawyer was using the court resecion and intermittent breaks during the proceeding to yell, shout, scream at the top of his long at the defendant with phrases like "do not burry the witness, you will loose the trial". Mr. Kirton was screaming loud enough near the door of the jury room to ensure that the jury at the jury room could hear him, certainly as much as everyone in the court room. Mr. Kirton seemed to be doing that purposely for intimidating the defendant, hurting his Pro-Se performance, and worst than all prejudicing the defendant before the jury who could easily hear him. The government lawyers were there; thus, the actions of Mr. kirton was never brought up by the court.

## NONE-EXPERT WITNESS WAS ALLOWED BY THE COURT TO TESTIFY AS AN EXPERT

The court allowed "Al Monica" to testify as an expert witness and admitted his testimony and presentation into evidence in violation of the Rule 702 of the Federal Rule of Criminal Procedure.

Al Monica a retired IRS agent who testified to having only completed accounting degree 34 years ago, and never since studied in an academic or technical institute was allowed to testify as an expert witness, and his opinion(S) regarding numerous scientific, technical, and highly advanced financial and specialized aviation subjects were admitted.

The witness is NOT an expert, and he was not called to testify as an expert because he lacks all the essential requirements called for by Rule 702. The witness testimony formed the ground upon which the government case and theories was built. Monica testified that "based on his view and interpretation of the evidence he was given, he decided that Bout is the owner of Ilex and the owner of Samar Air, and the owner of all of the other companies including Mega and others.

Monica's testimony is far from harmless because without the alleged ownership of Bout to the companies mentioned above the case would not exist and the government theory(s) cannot be supported. Monica is not an expert and his opinion in testimony should not have been admitted. The court overruled the many defense objections over Monica's testimony and its admissibility; thus, allowing the government to proceed with the introduction of his non-expert opinion into evidence.

HOWEVER;
The court refused to admit Monica's own e-mail which are CONTRADICTORY to his testimony in impeachment and sustained the government objections over the admission of Monica's email in which he clearly state that Mega among other companies are not owned by Victor Bout.

FURTHERMORE; the court refused to admit into evidence Monica's testimony before the grand jury and which was used for the purpose of obtaining the indictment against the defendant in this case. Monica admitted on cross-examination that he lied under oath to the grand jury; thus, the court's refusal of admitting the underlying documents and which can be used by the defense in impeachment on cross examination would result in barring the defendant from attacking the credibility of the witness in impeachment. The exclusion of Monica's email and his testimony before the grand jury prevented Chichakli from presenting a complete defense. See Wray v. Johnson, 202 F. 3d 515, 526 (2d Cir. 2000)

Monica's testimony was essential in getting the conviction and it played a major role in forming the jury's opinion as to the guilt or innocence of the defendant evident by the jury's note asking for a copy of Monica's presentation. The evidence that were precluded could have impeached Monica, who's testimony should not have been allowed in the first place because he is not an expert and he testified as an expert.

The denial of the impeaching evidence was far from harmless to the defendant's case given that such evidence would have, very likely "bore on the issue that was critical to the jury's decision" "quoting Hynes v. Coughlin, 79 F.3d 285, 291 (2d Cir 1991)

The U.S. Court of Appeal for the Second Circuit held in United States v. Lance White, [docket 11-772 Cri.] that the District court erred in granting the government motion to exclude evidence that can be used in impeachment on cross examination and in limiting the cross-examination of a government witness.

CROSS-EXAMINATION OF GOVERNMENT WITNESS OVER CREDIBILITY FINDING WAS DENIED

DEA-SOD Agent Robert Zachariasiewcz was scheduled to testify as part of the chain of custody of "Bout Laptop" for the government. Agent Zachariasiewcz was the agent in charge of the Bout case; the case in which "Bout laptop", the main piece of evidence in this case was allegedly obtaint, the same agent was in charge of this case, the case under trial, and it is also Agent Zachariasiewicz who was in custody of the "Bout Laptop" upon the arrest of Victor Bout in Thailand in March of 2008.

As the issue of the adverse credibility finding by Judge Shira Schendlin against agent Zachariasiewicz and the irregularity that followed surfaced, the government abruptly and without providing notice replaced agent Zachariasiewicz by an unannounced witness who was not listed on the government witness list. The court approved the replacement over the objection of the defense.

The court approval of the government request to replace agent Zachariasiewicz aimed and intended to prevent the defendant from bringing the issue of the credibility finding by a federal judge, and to deny the defense to question the agent about "Bout Laptop" which was in his custody, and to deny the defense the opportunity to cross examine the agent about the case and the development of its evidence; given that Agent Zachariasiewicz was the agent in charge of the case under trial since initiated and for several years that followed.

Upon the withdrawal of the Agent Zachariasiewicz by the government, the defendant followed by filing two separate requests with the court to call agent Zachariasiewicz as a witness for the defense, the government objected and the court agreed with the government objection and precluded the agent from appearing.



FROM: 92036054
TO:
SUBJECT: Appeal Letter-2
DATE: 02/09/2014 07:50:51 PM

The U.S. Court of Appeal for the Second Circuit found in United States v. Lance White (Docket 11-772-Cr.) that the District Court curtailment of examining a credibility issue resulted in denying the jury sufficient information to make discriminating appraisal of the facts.

In the matter of Agent Zachariasiewicz a federal judge suppression of evidence that were collected by the same agent opens the door widely to question, not only to the credibility of the Agent, but also to the credibility of the other evidence that were handled by agent Zachariasiewicz or came under his custody. That should be particularly taken seriously knowing that this very agent was a custodian of "Bout Laptop", and particularly after it was revealed during the trial that tampering with evidence seemed to be a common practice by the DEA-SOD Agents as demonstrated in the testimony of Agent Larsen.

FURTHERMORE;
The preclusion of Monica's testimony before the grand jury and in which he admitted under cross-examination to have lied under oath falls within the same category. The court sustained the government objection over the admission of Monica's emails, Monica's reports in which he recommended filing charges against the defendant, and his testimony; thus, barring the defendant from attacking Monica's credibility.

Rule 806 states that "Declarant credibility may be attacked, and then supported, BY ANY EVIDENCE THAT WOULD BE ADMISSIBLE FOR THOSE PURPOSES IF THE DECLARANT HAD TESTIFIED AS A WITNESS. Monica's "Hearsay" testimony and statements equivalent to those described in Rule 801(d)(2)(C), and (E) and which he made are all admissible under Rule 806 which clearly states " The Court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when occurred or whether the declarant had an opportunity to explain or deny it."

The Court preclude all the statement and evidence against Monica's credibility; thus, denying the defendant a fair trial.

THE GOVERNMENT CONSPIRED WITH THE BOP TO OBSTRUCT JUSTICE AND DENY THE DEFENDANT HIS CONSTITUTIONAL RIGHT TO PREPARE AND PRESENT COMPLETE DEFENSE

The defendant rights were violated, the government obstructed justice by conspiring with the BOP to unjustly and without a reason and through the illegal use of influence of the office of the US Attorney to place the defendant in the "SHU" in order to deprive the defendant from the essential tools and resources to prepare his defense and cause the collapse of the defense in an obvious act of corruption.

On or about October 27, 2013 and prior to the commencement of trial, the office of the US Attorney suggested to move the defendant from the MDC-Brooklyn Prison to MCC-Manhattan Prison which is more convenient in location. Mr. Everdell the assistant US Attorney for the SDNY stated that the Pre-Se defendant will be ordering that defendant be moved into a "Solitary Confinement" within the Special Handling Unit (SHU) at MCC prison, suggesting that he is doing so because that "will better help the defendant."

The "SHU" is a prison within the prison, it operates on a 24-hours per day locked-up regime with no e-mail access allowed, no telephone access allowed or one call per month with special approval, no contact with other prisoners, no access to the law library, restricted showers in time and frequency with hand-cuffed to the back movement with two guards, no access to commissary including coffee or refreshment, no access to hot water or microwave, no eating utensils, no access to religious service, and where not even a standard writing pen is allowed. Placement in the "SHU" is a disciplinary action that is usually taken against prisoners who violate the rules of the BOP. Due to the severity of the conditions at the "SHU" unit, the BOP is barred from placing prisoners there at will. A prisoner who is not in violation of the BOP rule cannot be placed at the "SHU" without his personal consent.

Defendant immediately voiced his opposition to the government plan because such placement will deprive him from his ability to call and contact witnesses, deprive him from his ability to type his motions and letters to the court, the government, and the other parties involved, and it will destroy and cause the complete collapse of his preparation of defense.


-----------------------------------------------------------------------------------

During the court conference on November 05, 2013 the defendant informed the court (as reflected in the records) that he categorically refuse to consent to the government plan, he refuse to consent to be placed in the "SHU", and he demanded in a letter to the government that the government stops its interference in his preparation of defense.

THEREAFTER;
On the morning of November 9th., just 5 days before the commencement of the trial, and without a cause, the defendant was arrested while he was typing a motion to the court, was hand-cuffed and taken to the SHU at the West-Building at MDC. Defendant asked why he was taken to the SHU, no answer was provided. Shortly; thereafter, the defendant was moved to the East Building of the MDC complex and he was placed immediately in solitary confinement without any justification whatsoever.

Shortly upon placement at the "SHU" defendant was given citation containing two alleged violations of BOP rules, defendant denied that any of the alleged violations occurred or even existed and filed several requests to have the video tapes previewed including BP Form-9 addressed to the Warden. The BOP is required by rules to investigate alleged incident within 5-days and a the prisoner must be interviewed by a Disciplinary Hearing Officer "DHO". Thus; yet until today's' date, more than 100 days past and neither an investigation have occurred, nor a a hearing by DHO took place, nor a formal citation was issued, nor the video tapes of the alleged incident was offered for preview in proof.

The defendant remained in the "SHU" for more than three weeks and was released to the General Population after Judge Pauley stated in open court that keeping the defendant in the SHU may help him in the appeal process; although the trial was not yet concluded!

HOWEVER;
The conspiracy between the U.S. Attorney and the BOP, an example of a corruption that thought to have only be associated with undemocratic Totalitarian regime, the violation of the defendant's rights and the clear act of obstructing justice have surely accomplished its objectives in destroying the possibility of affording the defendant a fair trial. The defendant was denied all forms of access, placed on 24-hours locked-up regime, given no access to the stand-by lawyer and was disallowed to contact him or anyone else. The defendant was placed in solitary confinement with no human contact during all of the Five-days preceding the commencement of trial from the 9th until the 14th of November in order to adversely affect his mental health and his physical health as well as can be testified to by the assistant of Mr. Kirton who saw the defendant prior to him being moved from the "SHU" at MDC-Brooklyn to the "SHU" at MCC-Manhattan were he remained for the majority of time of the trial. The defendant was denied food, denied medical care, denied the basic human need to stay alive.

Defendant was subjected to inhuman conditions and was denied the opportunity to prepare a complete defense in violation of his constitutional rights.

## THE JURY COMMUNICATED PREJUDICE COMMENTS TO THE COURT AND THEY COULD NOT RENDER IMPARTIAL AND FAIR DECISION

The jury panel were informed by the judge that they will be expected to serve for three weeks. The trial lasted Five weeks; including the time of the jury deliberation.

Two different e-mails were sent by two of the jurors; including the foreperson in which notes the jury commented in manners that displayed prejudice against the defendant. The notes further indicated that the courts instructions were not obeyed by the jury panel as in one of the note it read " There is great deal of discontent in the jury room" indicating that:
    1- The jury were discussing the trial, while they were instructed not to do so
    2- The jury blames the defendant alone about the delay
    3- The jury are suffering because of the defendant.

The comments that were sent by the jury is, unquestionably, displays a great deal of prejudice in a way will prevent the jury from rendering a fair, impartial, and just verdict. A person who believes to be suffering due to an act of another identifiable person is more likely to tend to retaliate even if he or she did not intended to do so. The panel of jury were blaming the defendant alone, and were blaming him because the judge told them to expect a three weeks trial.

ACCORDINGLY;
The verdict was rendered by a prejudice jury panel and therefore it should be set aside.

Respectfully submitted
Richard Chichalki

TRULINCS 92036054 - CHICHALKI, RICHARD AMMAR - Unit: BRO-I-A

---

FROM: 92036054
TO:
SUBJECT: Response to Computer Issue
DATE: 02/10/2014 10:08:10 AM



February 10, 2014

Honorable William Pauley III
U.S. District Judge - SDNY
500 Pearl Street
New York, N.Y. 10007

      Subject: Discovery material and trial's 3500 Material
      Court's appointed representative Mr. Marlon Kirton
      Reference: United states v. Richard Chichakli, case# 09-Cri.-1002 (WHP)

Hon. Judge Pauley

    Reference is made to the court order on January 16th, 2014 regarding the above mentioned case and subject. Defendant received a copy of the government response to the court and copy of Mr. kirton's response along with a copy of the trial transcripts on February 5th as indicated in the prison records.

    Defendant would like to clarify for the records that the statement that was made by the government to the court concerning the availability of the discovery and the 3500 material is incorrect.

    The computer was taken away by the US Marshals the day the trial ended at the order of the U.S. Attorney according to the Marshalls, not "by accident" at all as stated in the letter of the assistant U.S. Attorney. Defendant did not, and is still have not seen nor have received the said computer nor any of the discovery or the trial's 3500 material since the trial ended.

    The Assistant U.S. Attorney have also stated that on January 28, 2014 the computer became available to the defendant at MDC; thus, this is further incorrect and as of today's date the legal department at MDC is yet to issue a memo authorizing the guards (the Correction Officers) to allow the prisoner to be in the visit room. Prior to trial a memo was issued by MDC legal department for that purpose. IT IS NOTED, that all I need is the trial's 3500-material and the discovery regardless of the computer which became the excuse that prevents the delivery of the material.

    In regards to Mr. Kirton, I note for the records that since the end of the trial, two months ago, I have not seen him nor heard from him concerning the progress of the matter in the court. I have heard that the trial date was sat to the 14th of March through the media, and I was not aware of that fact. I further was made aware of the visit of the PSI at the night prior to the day of the visit; being last Friday Feb/07/2014.

    Although the behavior of Mr. kirton is consistent with the way he handled the case in the past, it is rather alarming that the person concerned is kept in the darkness about the progress of the to such level. The trial ended two month ago and I am supposed to be sentenced in a month and I have not made aware of that, nor have I met with the so-called lawyer to review the appeal motion he supposed to file, nor the work he is required to perform for the sentencing statement. Perhaps this is a new form of justice, and that is noted for the records also.

Respectfully submitted

*[signature]*

Richard Chichakli

cc: